37 C.C.P.A.(Patents)

Application of HERITAGE (two cases).

Patent Appeals Nos. 5665, 5666.

United States Court of Customs
and Patent Appeals.

April 3, 1950.

Rehearing Denied June 28, 1950.

W. Bartlett Jones, Chicago, Ill. (Ivan P. Tashof, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JACKSON, Judge.

Appellant separately appeals from two decisions by the Board of Appeals of the United States Patent Office, affirming decisions of the Primary Examiner, finally rejecting all of the claims, 52 to 55, inclusive, 68, 70 and 74 to 81, inclusive, of an application, serial No. 294,212, filed September 9, 1939, "For Insulation of Confined Spaces," and all of the claims, 21 to 27, inclusive, of an application, serial No. 477,-751, filed March 2, 1943, as a continuation-in-part of the former application.

For the reason that the appeals bear such close relationship, they will be decided in a single opinion.

Appeal No. 5665—Serial No. 294,212.

The claims in this appeal were rejected for want of patentability over the following cited prior art:

| Moller | 1,756,468 | April 29, 1930. |
| Tannery | 1,827,858 | October 20, 1931. |
| Finck | 1,923,195 | August 22, 1933. |
| Tappen | 1,971,123 | August 21, 1934. |
| Ericson et al. | 2,200,713 | May 14, 1940. |
| Wenzel | 2,235,542 | March 18, 1941. |

The claims were further rejected on the ground of undue multiplicity.

All of the claims are for method. Claims 52 and 80 are illustrative of the involved subject matter and read as follows:

"52. The method of introducing thermal insulation material into a space to fill said space with said material for using said filled space as thermal insulation which comprises providing a confined space completely bounded by facial walls the total area of which has both perforate area and imperforate area, providing in said total area at least one inlet area while maintain-

ing space-confining area in any facial wall having inlet area, providing in at least one of said facial walls predetermined filtering perforate area and filtering means covering said latter area, introducing into said confined space by conducting to and through the inlet area at an impelling velocity moving gas containing suspended particles of insulating material which pack to a consolidated gas-filtering body, the velocity of said moving gas and the location and size of said filtering area with respect to inlet area all being such as to carry particles with turbulence to all portions of the confined space, continuing said introduction and completely packing said space at least to the inlet area with particles packed to a consolidated gas-filtering body of said insulating material, said filtering area serving to retain the particles and to release the gas, and retaining said body in situ in said space as a confined insulating medium.

"80. In depositing particles to form insulation in situ in a refrigerator formed of inner and outer shells each with an open face together providing an opening for closure by door, which shells provide a continuous space between them opening through screening means into said door opening, one of said shells having an opening in its wall opposite said door opening to provide an introductory inlet to said space of size relatively large compared with the foramina of said screening means, the method which comprises, suspending in a moving gas, particles of insulating material which pack to a consolidated body that is a gas-filtering body at an insulating density of the so-packed particles; introducing the resulting moving gaseous suspension into said space by conducting the suspension to and through said introductory inlet; simultaneously venting said gas from said space through said screening means, and there filtering said vented gas from particles, thereby depositing and packing particles to form a growing gas-filtering mass thereof in corresponding portions of said space over and extending away from said screening means; simultaneously maintaining in the remaining portion of said space a condition of turbulence of

said gaseous particle-suspension by maintaining a high and sufficient velocity therefor in introducing said suspension whereby the turbulence causes deposition and packing of particles in margins of the turbulent space; and continuing said introduction, said maintenance of turbulence, and said venting of said gas through said screening means and also through said growing mass at least until a body of said particles begins to form in said inlet and said space is completely packed with said particles consolidated to a gas-filtering body at an insulating density and resultingly molded into said space and compressed therein by the differential introduction pressure between said inlet and said screening means."

The application relates to a method of filling a confined space with felted fibers for the purpose of heat insulation. There is described a suspension of the fibers in an air stream of high velocity. The air stream in which the fibers are carried passes from the space through screened openings, the mesh of which is fine enough to prevent the escape of the fibers, which are retained against the screens until the fibers build up and completely fill the space. During the process, the air is said to be in turbulent motion so that the fibers are carried to all parts of the space, and because of high velocity and turbulence within the space, a felting of insulation is produced which is sufficiently dense so that there is no settling. The inlet opening and screened outlets may be in different parts of the enclosed space. In other words, they may be on the same face of the enclosure of the space, or on opposite faces, or around a corner from each other or in combination of those locations. It is said that the functioning of the process and production of the variations in the density of the insulated area depend upon the relation of the inlets and screened outlets.

It is stated in the decision of the Primary Examiner that the elected species herein is for a method of felting the hollow wall of a conventional refrigerator with insulation, and particularly to blowing such insulation as wood fiber into the hollow space.

The Moller reference has for its object the providing of an apparatus in which mats or bats of fibrous material are produced. The process comprises a fiber laden blast of air conveyed into a molded chamber in which the fibers become packed. The molding chamber has walls which are so constructed that the mat or bat may be produced in any desired space, size or contour in cross section. The top wall of the molding chamber is so perforated that the air coming into the chamber escapes through the perforated top, while an obstruction plate holds the fibers in the chamber until a sufficient bat has been formed to be maintained by fractional contact with the walls of the chamber when the plate is removed. The finished bat is removed from the chamber on an endless underlying belt.

The Tannery invention relates to mattress boxes or devices employed in the manufacture of cotton mattresses. A box is disclosed in which there are side panels with openings covered by a screened netting and the pyramidal top of the box has a vent opening covered with a screen netting. Cotton lint is upwardly blown into the box through an opening in a side wall. When sufficient lint has been blown into the box, the top is removed and a press lowered to compress the lint.

The Finck patent has to do with heat insulation structures such as household refrigerators, ice houses, railroad refrigerator cars, buildings, ships, etc., and claims both a heat insulating structure and a method of manufacturing the same. The insulating material of the patent consists of loose fibrous materials. A cross-sectional view of a panel form of insulation unit is disclosed in the drawings, with an opening on a side thereof through which the insulation passes, and when the hollow spaces in the panel become filled, the opening is closed by a cover plate. It is stated in the specification that air pressure is preferably employed in the process of filling the panel, which process packs the insulating material at a proper density. The patent discloses the hollow wall of a refrigerator filled with the insulating material by means of air pressure.

In the Finck patent, a copending application of the inventor is referred to. That application became abandoned and the disclosure thereof was not relied upon by the examiner in the present case.

The Tappen patent relates to means for filling inaccessible places, such as spaces under the decks of refrigerator ships and the roofs of refrigerator cars. Those spaces are said to be extensive, and at their ends and corners are inaccessible to hands or ordinary tools. The invention discloses means whereby material, such as granulated cork, is blown into the space until it is completely filled by the packed insulation, and means is provided to vent the space so that air may escape therefrom as the space is filled. A vent pipe is disclosed in the apparatus of the patent, extending through an opening in the lower wall of the space in the structural elements of a ship or a refrigerator car. The opening is temporarily closed by a sealing flange or collar through which there are apertures in which the pipe and a vent pipe are seated. With respect to the manner in which the insulation is accomplished, it is stated that: "The force of the blast will, of course, be sufficient to carry the finely divided or powdered material to the remote corners and angles of the insulating space and as the material collects and packs in the space, the air therein will escape through the vent pipe 11, as will be understood. After the space has been entirely filled, the pipe 3 and the vent pipe 11 are withdrawn and the openings through which they were fitted may be filled in any desired manner."

The Ericson et al. patent relates to building insulation and a method for placing the same. The insulating material, which consists of particles of mineral or other fibers or granules, as desired, is placed in the hollow spaces of walls, ceilings and similar structural elements of buildings and other structures, which require thermal or acoustical insulation. It is disclosed that the insulating fibers are blown into the hollow spaces through a nozzle inserted into an opening in the wall. It is said that the particles freely suspended in the air stream pass near the point of delivery into a con-

stricted exit end of the conduit, the restriction being designed to increase the velocity of the air stream at the exit end. A result of the patentee's method of insulating is described in the patent as follows: "This increased velocity and momentum results in a more forceful delivery of the particles and causes them to unite more closely and interlock and interlace at their tendrils to such an extent that the blanket has a greater resistance to touch and a springiness than the blanket produced under the old method."

The Wenzel patent relates to building insulation and the method of forming the same. The insulating material disclosed is readily separable into fragments and preferably of light weight and irregular form, and the introduction thereof into the space to be filled is done in such manner that the fragments are independently free to move as they will and find individual points of final lodgment in the space. The material may be of cut, chopped or fragmented paper and vegetable stems, stalks, leaves and husks, also in fragmentary form. The insulating material is air-blown into a hollow space through a nozzle which is inserted between laths in a wall, as is shown in one of the drawings. It is said that the insulating material, after having been blown into the space to be filled while in suspension in the air blast, becomes liberated and falls into points of ultimate lodgment. It is further said that the air stream laden with the fragments sets up currents and eddies, which maintain some of the fragments in agitation or suspension until the space is entirely filled, and by reason of such currents and eddies the fragments drift into otherwise inaccessible nooks, corners or extensions of the space, while the air, in escaping through the walls, carries some of the fragmented material against them so as to form a seal and affect insulating contact against the walls. It is stated that: "When thus introduced, the individual fragments ultimately recombine within the space to form a rather loosely knit mass or blanket of highly desirable uniform texture in which the interlocked or interengaged fragments coact to form innumerable minute dead-air cells substan-tially uniformly distributed throughout the mass."

All of the involved claims were rejected by the examiner as unpatentable over the Finck reference in view of each of the other patents. He pointed out that the secondary references all disclose the use of a filter or its equivalent, and that it would not involve invention to provide a screen for such purpose in the Finck structure. He noted that in appellant's application, it is shown that the blowing of thermal insulating material into spaces intended to be filled by means of air is old, and that, "Air filters out where chance permits and thermal insulating material is left in the wall to drop by gravity as chance permits." The examiner stated that if there is filtering in the example given by appellant, there is also filtering in the process of each of the cited secondary references. The examiner noted the admission of appellant that the structures of the Moller and Tannery patents have "screening means in part defining the space." The examiner further rejected all of the claims as lacking invention over the Finck patent alone. He observed that in the patent an air pressure process is used in introducing insulation through the openings shown in the drawings of the patent, and stated that the insulation particles when so introduced obviously are carried by a current of air. He further stated that even if the particles were not so carried, it would be within the skill of the mechanic to blow in those particles. In that connection the examiner cited the case of Therm-O-Proof Insulation Co. v. Slayter & Co., 7 Cir., 1935, 80 F.2d 557. The opinion in that case, it seems to us, is apposite in sustaining the holding of the examiner.

As hereinbefore mentioned, the examiner further rejected all of the claims on the ground of undue multiplicity, stating that, "They are submitted as being directed to methods but the differences among them are merely in structure or apparatus." The board in its decision affirmed all of the examiner's grounds of rejection.

While the Primary Examiner specifically stated that the copending application of Finck, referred to in his patent and sub-

sequently abandoned, was not relied upon, the Board of Appeals held that the disclosure by reference to the abandoned application was part of the patent disclosure. Therefore, it is clear that the board applied a new ground of rejection and examined the abandoned application for a disclosure of a peripheral guard screen in the door opening of a refrigerator.

In affirming the rejection by the examiner on the ground of undue multiplicity, the board pointed out that the involved application had been examined in several different divisions and had been involved in several interferences. It noted that the application came before it with claims 52 to 55, inclusive, 64 (the patentability of which was not before the board), 68, 70 74 and 75, corresponding to the issues of those interferences, and that claims 76 to 81, inclusive, were so drawn as to separate apparatus recitation in the preambles.

It appears in the boards' decision that in appellant's brief before it, he preferred the second group of claims and retained and appealed the first group, "to avoid a file wrapper estoppel," and that counsel stated in the brief for appellant, "It is clear that the applicant does not need all of the appealed claims." Therefore, it was held by the board that the ground of undue multiplicity was well taken by the examiner.

■ While we are of the opinion that the rejection of the claims on the ground of undue multiplicity is sound, nevertheless because there are only 14 claims involved herein and an examination of them by us is not confusing, we think it proper to consider the propriety of the rejection of the claims on the prior art.

■ We do not deem it necessary to refer to the disclosure of the abandoned application referred to in the Finck patent, although, in our opinion, such reference was properly discussed in the board's decision. There can be no question but that in a patent application, the disclosure thereof may be supplemented by reference to another patent. In re Stauber, 45 F.2d 661, 18 C.C.P.A., Patents, 774.

■ It must be remembered that the abandoned application by itself was not cited by the board as a reference, and since it was referred to by the patentee in his specification, it surely became part of the disclosure set out therein. Furthermore, it is sound law, in our opinion, that any reference to a disclosure which is available to the public is permissible. The Hamilton Laboratories, Inc. v. Massengill, 6 Cir., 1940, 111 F.2d 584, certiorari denied 311 U.S. 688, 61 S.Ct. 65, 85 L.Ed. 444.

Counsel for appellant in their brief stated that the abandoned application was not open to the public. However, the record shows that after suitable petition for access had been made such access had been granted.

In the brief of appellant it is contended that appellant had solved a problem, "by changing the process to create turbulence in all the unpacked spaces." In our opinion there is no patentable difference between the turbulence in appellant's application and "the swirling action" which appears in the Ericson et al. reference. The use of a screen in the art is old, as is clearly disclosed in the structures of the Moller and Tannery patents. While in appellant's brief it is contended that those two patents are in nonanalogous arts, nevertheless, the disclosures shown therein are pertinent. In re O'Connor, 161 F.2d 221, 34 C.C.P.A., Patents, 1055. Both the Moller and Tannery patents disclose a process in which insulated material, such as cotton lint, is blown into a space to be filled by a blower.

■ We are convinced that the involved claims were properly rejected on the prior art, and therefore the decision of the Board of Appeals is affirmed.

Affirmed.

Appeal No. 5666—Serial No. 477,751

■ The patent application in this appeal is for "Method of Pneumatically Packing Insulating Particles Into a Boxlike Space." The application is one of five continuation-in-part applications of the parent application, serial No. 294,212, involved in our decision in appeal No. 5665.

Four of those continuation-in-part applications ripened into patents. It is said in the brief of appellant that the claims in appeal No. 5665 are generic to the species being claimed in this appeal, and also to the species covered in each of the said patents issued on the continuation-in-part applications.

All of the claims were rejected by the Primary Examiner as not complying with section 4888 R.S., 35 U.S.C.A. § 33; as directed to a mere function of the apparatus; as being needlessly multiplied; and as unpatentable over the same references, with the exception of the Wenzel reference, as were relied upon in the rejection on the prior art in appeal no. 5665.

Claims 21 and 26 are illustrative of the involved subject matter and read as follows:

"21. In depositing and forming particles of insulating material in situ into thermal insulation in a continuous space completely defined and confined by walls including a removable wall in which is provided one or more introductory inlets opening into said space, of which walls the space-confining surfaces include a major portion which is substantially resistant to the passage of gas and one or more remaining portions, each in the form of screening means with foramina relatively minute compared with said one or more inlets, for venting gas from the space and for retaining said particles in the space, the method which comprises, suspending in a moving gas, particles of insulating material which pack to a consolidated body that is a gas-filtering body at an insulating density of the so-packed particles; introducing the resulting moving gaseous suspension into said space by conducting the suspension to and through said one or more introductory inlets; simultaneously venting said gas from said space through said screening means, and there filtering said vented gas from particles, thereby depositing and packing particles to form a growing gas-filtering mass thereof in corresponding portions of said space over and extending away from said screening means; simultaneously maintaining in the remaining portion of said space a condition of turbulence of said gaseous particle-suspension by maintaining a high and sufficient velocity therefor in introducing said suspension whereby the turbulence causes deposition and packing of particles in margins of the turbulent space; continuing said introduction, said maintenance of turbulence, and said venting of said gas through said screening means and also through said growing mass at least until a body of said particles begins to form in each of said one or more inlets and said space is completely packed with said particles consolidated to a gas-filtering body at an insulating density and resultingly molded into said space and compressed therein by the differential introduction pressure between said inlet or inlets and said screening means; and removing said removable wall and retaining in situ the material packed into said space.

"26. In depositing particles of insulating material in a continuous space completely defined and confined by walls including a shell-casing of a door for a refrigerator or the like and a removable closure for the shell which closure is provided with one or more introductory inlets opening into said space, of which walls the space-confining surfaces include a major portion which is substantially resistant to the passage of gas and one or more remaining portions, each in the form of screening means with foramina relatively minute compared with said one or more inlets, for venting gas from the space and for retaining said particles in the space, of which screening means at least one is in said closure, the method which comprises, suspending in a moving gas, particles of insulating material which pack to a consolidated body that is a gas-filtering body at an insulating density of the so-packed particles; introducing the resulting moving gaseous suspension into said space by conducting the suspension to and through said one or more introductory inlets; simultaneously venting said gas from said space through said screening means, and there filtering said vented gas from particles, thereby depositing and packing particles to form a growing gas-filtering mass thereof in corresponding portions of said space

over and extending away from said screening means; simultaneously maintaining in the remaining portion of said space a condition of turbulence of said gaseous particle-suspension by maintaining a high and sufficient velocity therefor in introducing said suspension whereby the turbulence causes deposition and packing of particles in margins of the turbulent space; continuing said introduction, said maintenance of turbulence, and said venting of said gas through said screening means and also through said growing mass at least until a body of said particles begins to form in each of said one or more inlets and said space is completely packed with said particles consolidated to a gas-filtering body at an insulating density and resultingly molded into said space and compressed therein by the differential introduction pressure between said inlet or inlets and said screening means; removing said closure and retaining in situ the material packed into said space; and applying in the place of said closure a retaining coverwall."

All of the reasons for rejection given by the Primary Examiner were reversed by the Board of Appeals except the rejection of the claims as unpatentable over the patent to Tappen in view of the Tannery, Moller, Ericson et al. or Finck references.

The application discloses several variations of appellant's process: one with respect to the filling of a refrigerator door, a second with reference to filling the space between a refrigerator shell and food compartment through the space between them at the door opening and a third in connection with filling a rectangular box.

The difference between the alleged invention of the involved claims and those involved in appeal No. 5665 resides, as is stated in the brief of appellant, in the fact that: "There is no art available to suggest filling a space by use of one facial wall to receive the air-suspension, and the same wall to remove the air, said wall having inlet area and screened exhaust area arranged with respect to the space to be filled, so that all the unpacked space may be always turbulently filled."

Here, as distinguished from the process in appeal No. 5665, the air in which the insulating material is in suspension enters a wall and passes out through that same wall, the exhaust area being screened. The patent to Tappen clearly discloses the air blowing of insulation material in a wall face which is provided with a vent pipe in the same wall for the escape of air. The vent disclosed in the Tannery and Moller references provides for the use of a screen against which the insulating material has been deposited, and it is clear to us that it would not involve invention, in view of those teachings to replace the vent pipe of the Tappen patent by a screen.

Therefore, the decision of the Board of Appeals is affirmed.

Affirmed.